L. L. MORGAN, *Appellant,* v. MARY J. WILLIAMS, *Appellee.*

Decision Filed February 23, 1922.

Petition for Rehearing Granted April 12, 1922.

Opinion Filed February 24, 1923.

Where in a suit to redeem lands from a mortgage, the court ad-
judges the right to redeem upon the payment of stated
amounts "within sixty days from the filing of this decree," and
an appeal is taken within the sixty days and duly prosecuted,
upon an affirmance of the decree the parties entitled to re-
deem have sixty days from the receipt of the mandate for
filing in the Circuit Court, within which to pay the amounts
adjudged in the decree for redeeming.

An Appeal from the Circuit Court for DeSoto County;
George W. Whitehurst, Judge.

Affirmed.

*Arthur F. Odlin* and *R. A. Henderson, Jr.,* for Appel-
lant.

*Leitner & Leitner,* for Appellee.

PER CURIAM.—This cause having heretofore been sub-
mitted to the court upon the transcript of the record of
the order aforesaid, and briefs and argument of counsel
for the respective parties, and the record having been seen
and inspected, and the court being now advised of its judg-
ment to be given in the premises, it seems to the court that
there is no error in the said order; it is, therefore, consid-
ered, ordered and adjudged by the court that the said or-

der of the Circuit Court be, and the same is hereby, affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.

ELLIS, J., dissents.

## On Rehearing.

PER CURIAM.—Separate proceedings were brought to foreclose a mortgage predicated upon a conveyance of land alleged to have been in legal effect a mortgage and to redeem from the mortgagee, the mortgagee being in possession by agreement. These proceedings were consolidated and a decree was rendered that if the heirs of the mortgagor or his widow shall pay to the mortgagee "within sixty days from the filing of this decree the sum of $410.00 with legal interest from October 25, 1903, also the sum of $4000.00 which the court finds to be the value of the improvements as set forth in the preceding clause of this decree," found to be equitable under the facts and circumstances of the case, then the mortgagee shall turn over to such heir or heirs so redeeming the possession of the land, "and shall also execute a proper release or quit-claim deed to cover the said land. Failing to make such payments the said property shall be owned absolutely in fee simple by the" mortgagee. This decree was dated February 18, 1919, and was affirmed December 3, 1920, and a rehearing denied December 17, 1920. Williams v. Morgan, 80 Fla. 779, 86 South. Rep. 845.

In a petition filed February 8, 1921, by the one desiring to redeem, it is alleged that the mandate showing the affirmance on December 3, 1920, of the decree of February

18, 1919, was *filed* in the Circuit Court January 23, 1921; that on February 5, 1921, the amount decreed to be paid for redemption was tendered to solicitors for the mortgagee and a deed requested under the decree; that the tender was refused and on February 7, 1921, the amount was paid into the registry of the court. The petition prayed for a writ of possession and that the mortgagee be required to make the deed of conveyance as decreed by the court. On February 12, 1921, the mortgagee answered the petition averring that more than 60 days had elapsed since the affirmance of the decree and before a tender was made, and praying for a decree in favor of the mortgagee.

The court awarded a writ of possession and held the mortgagee in contempt for not making the conveyance as decreed. This decree was affirmed. A rehearing was granted.

It appears that the mandate of this court was issued December 18, 1920, and was received by the Clerk of the Circuit Court about December 23, 1920, and filed January 24, 1921. The tender was made to redeem under the decree on February 5, 1921, and payment into the registry of the court was made February 7, 1921.

The decree allowing sixty days from its filing for redemption was subject to the appeal; and after affirmance on appeal duly taken a like period of sixty days should be allowed for redemption. When the decree was affirmed, the time that elapsed before the appeal was taken twenty-three days after the decree was filed, should not be deducted from the sixty days within which redemption could be made after affirmance of the decree and the receipt of the mandate for filing in the Circuit Court. This rule is particularly applicable to cases of redemption of homesteads from mortgages, and it is a proper rule under the

facts of this case. The question is not the effect of a supersedeas but the intent and effect of the decree of affirmance.

In enforcing the decree the chancellor will take care that equity be done to both parties and that no undue hardships be enforced. With this admonition to the chancellor the decree appealed from is hereby re-affirmed.

TAYLOR, C. J., AND WHITFIELD AND BROWNE, J. J., concur.

ELLIS AND WEST, J .J., dissent.

BROWNE, J.—Concurring.

I fully concur in the opinion of the majority of the Court, but I desire to submit other reasons that impel me to a concurrence.

A decree becomes effective when filed, unless appealed from; in which event it becomes effective when the mandate from this court affirming it is filed in the office of the Clerk of the Circuit Court.

I regard the words used by the chancellor "within sixty days from the filing of this decree" as equivalent to "within sixty days from the date when the decree becomes effective."

As an appeal was taken the decree became operative only when the mandate was filed in the office of the Clerk of the Circuit Court, under tthe natural intent as shown by the language used in the decree, the appellee had sixty days from that date, and whether December 23, 1920, or January 24, 1921 was the date when it became effective, the payment was tendered well within the sixty days in

which it was allowed to be made. This view, suggested by reason, is supported by authority.

In the case of Fehton v. Farmers' & Merchants' Nat. Bank, 27 Tex. Civ. App. 231, 65 S. W. Rep. 199, the court held: "Where a judgment for recovery of land on condition of paying a certain sum of money into court within ninety days, for the use of defendants, within ninety days, was suspended by appeal with supersedeas, and writ of error applied for in the Supreme Court on affirmance, the judgment only became effective on the refusal of writ of error by that court; and a payment of the money into court within ninety days from such refusal of the writ of error was in time to save the plaintiff's right to the judgment for recovery of the land."

In that case the defendant bank recovered judgment against W. T. Fehton, Joshua A. Graham and Mrs. Lucretia Schuster for three-fourths undivided interest in certain lands upon condition that the bank pay into the registry of the court within ninety days from the date of the judgment, $9,964.62.

The judgment provided that "in the event the plaintiff, the bank, shall fail to pay said sum of money, as herein before provided, within the time prescribed, together with interest, then and in that event it is ordered, adjudged and decreed that the plaintiff (the bank), without further order of this court, take nothing by its said suit against defendants, W. T. Fehton, J. A. Graham and Mrs. Lucretia Schuster, and that said defendants recover of and from said plaintiff such cost by them in their behalf incurred, and that they be forever quieted in their title and possession to said lands above named, as against the plaintiff in this suit."

In deciding the case the court said: ''The judgment of the District Court was not final and did not become final until it was in effect affirmed by the Supreme Court. Then it began to operate, and not until then. The ninety days time in which the bank was allowed to pay the money as a condition to recovery of the land did not begin to elapse until the Supreme Court refused the writ of error to the Court of Civil Appeals. Then the judgment of the District Court began to have effect. It was suspended until then by the appeal upon supersedeas bond. Rev. Stats., Art. 1406; Railway v. Jackson Bros., 85 Texas 605; 68 Texas 98. There is no question but that the bank had the right to appeal from the judgment, and thus suspend its operation during appeal.''

In the case of Ruzika v. Hotovy, 72 Neb. 589, 101 N. W. Rep. 328, 9 Ann. Cas. 1058, the court held: ''Where a decree for specific performance requires the plaintiff to deposit money or securities in court within a specified time, as a condition precedent to the enforcement of the deree against the defendant, and the defendant, within the time limited for making such deposit, appeals from the decree and supersedes it, the time allowed for making the deposit is thereby extended until a like time after the decree becomes again enforceable.''

In passing upon the same contention that is made in the instant case, the court held: ''This contention cannot be sustained. The defendant, by taking his appeal and filing his supersedeas bond, has suspended the operation of the decree. The time allowed plaintiff to comply with the terms of the decree has thereby been extended. When the decree becomes again enforceable in the District Court, the plaintiff will have the time allowed in the decree in which to comply with these terms.''

This seems to me to be conclusive, but as there is another view of this case that I think requires affirmance of the judgment, I shall discuss that also.

This aspect makes it necessary to decide on what date the mandate was filed in the office of the Clerk of the Circuit Court.

A stay of proceedings by supersedeas during appeal does not terminate until the mandate of the Supreme Court is filed in the trial court after the affirmance of the judgment. Rock Island Nat. Bank v. Thompson, 173, Ill. 593, 50 N. E. Rep. 1089; Pickel v. Pickel, 251 Mo. 197, 158 S. W. Rep. 8.

Assuming that the twenty-three days that had run when the supersedeas order was obtained should be taken as part of the sixty days allowed for redemption, the defendant was still within the time, as the supersedeas order did not terminate until the mandate was filed in the trial court.

The Clerk certifies that the mandate was filed on January 24, 1921, but attempts in his certificate to supply from memory the date when he claims that it was received in his office. There is no record evidence that he received it on the 23rd of December, and his memory of the date "about" when he claims to have received it, should not be accepted to contradict the date shown by his file mark.

I am not unmindful that this court has held that in the absence of the file mark upon a paper, evidence may be received to establish the date when it was deposited with the clerk. Willingham v. State, 21 Fla. 761; County Commissioners of Franklin County v. State ex rel. Patton, 24 Fla. 55, 3 South. Rep. 471.

The facts in these cases are such that they should not be regarded as controlling under the facts in the instant case.

In the Willingham case, *supra*, it was contended that "the indictment upon which the prisoner was tried was never made part of the record by the Clerk of the Circuit Court placing his file mark on the same."

The court found that "the indictment was presented by a grand jury in open court and ordered by the court to be filed." Under this state of facts the court said: "The file mark is but one evidence of a paper having been filed." The decision of the court, however, was that the point not having been made in the lower court it came too late.

In the case of County Commissioners of Franklin County v. State *ex rel.* Patton, *supra,* it was sought by mandamus to require the County Commissioners of Franklin County to receive the returns of an election "and to file the same as public records and documents to the county."

One of the grounds of the demurrer to the alternative writ was that "the act does not require the County Commissioners to file the returns of such an election."

The court held that the provisions of the statute imposed by implication, upon the County Commissioners the duty of receiving such returns, when so made. Upon passing upon this, the court said: "The provisions of the statute under consideration require the inspectors of election to canvass the vote cast, and to 'make due returns of the same to the county Commissioners, within five days after said election.' This provision imposes, by implication upon the County Commissioners the duty of receiving such returns, when so made, into their official custody and

keeping. It makes them the official depository of the same as the records of the result of the election just as much as if the statute said in express language they should so receive and file them. To hold to the contrary would make the statute meaningless, and require of the inspectors the idle ceremony of tendering the returns to the commissioners without imposing upon the latter a corresponding duty of receiving them; and under such a construction the provision in question would either have no effect, or would relieve the inspectors of any responsibility for the care of the returns after the futile performance of offering them to officials who are not bound to receive them, had been even most solemnly enacted. * * * There is nothing in the objection that the statute does not require the commissioners to 'file' the returns. A paper is filed when it is delivered to the proper officer and by him received to be kept on file."

I have quoted thus fully from this opinion, to show the state of facts upon which the last sentence is predicated.

The question as to the effect of the date when a paper is certified by the clerk to have been filed, was not involved, discussed nor decided in that case.

Neither of these cases seems to be authority for the proposition that the clerk of a court may mislay a paper, and upon its subsequent recovery after search endorse on it that he filed it on that date, but received it on some prior date, and make the date of its receipt the date when it was filed.

The mandate was not placed in the files of the papers in the case with which it belonged, until the 24th day of January, 1921; the file mark was not placed upon it until

that day and we have only the clerk's statement from memory of the date about when he received it.

In Cooper v. Frierson, 48 Miss. 300, text 310, it was said that "the term 'filing' imports that the paper shall remain with the clerk as a record, subject to be inspected by those who have an interest in it." See also Meridian Nat. Bank v. Hoyt & Bros. Co., 74 Miss. 221, 21 South. Rep. 12.

In People v. Peck, 67 Hun. (N. Y.) 560, 22 N. Y. S. 576, Mr. Justice Herrick said: "A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file. (Bouvier Law Dict.) And the derivation and meaning of the word, as defined in the dictionaries, carries with it the idea of permanent preservation; becoming part of the permanent records of the public office where it is filed. (Rapalje & Lawrence Law Dict.; Century Dict.)".

In the case of the Meridian Nat. Bank, *supra,* the court gives the definition of the word file from Anderson's Law Dictionary as "At common law, a thread, string, or wire, upon which writs or other exhibits are fastened for safe keeping and ready for reference." And in the same case, the court says that "Webster quotes Burrill, as follows: 'To file a paper on the part of a party is to place it in the official custody of the clerk. To file, on the part of the clerk, is to endorse upon the paper the date of its reception, and retain it in his office, subject to inspection by whomsoever it may concern."

In the Meridian Nat. Bank case, *supra,* the facts were, that counsel delivered a creditor's bill and exhibits to the chancery clerk which he placed in a regular court wrapper and marked on it the word "filed," etc., and made a corresponding entry in the general docket. Counsel then took the bill and exhibits back to his office.

It was held that notwithstanding the papers were received by the clerk on that day and endorsed by him as having been filed, and made corresponding entry in the general docket, that the papers were not filed.

The object of having the clerk place the date of delivery of a paper to him, which is called "filing" is that there shall be a permanent record of the date of such delivery. The date of receipt, and the date of filing should be the same.

With reference to the mandate in the case under consideration, the clerk saw fit to distinguish between the date when he received it and the date when he filed it, which indicates that between those dates the paper was not among the public records of his office, and supports the contention of the appellee that in the interval between the two dates, the mandate had been mislaid, and was therefore not among the records or files of the court, and was not placed by the clerk among the records or files until the 24th day of January, when he certified to that fact.

On the 2nd day of February the Clerk of the Circuit Court wrote to counsel for appellant that he received the mandate "about 12/23/1920 and filed Jan. 24th, 1921."

The Circuit Judge certifies that L. L. Morgan, the appellant testified before him that he saw the mandate in the office of the Clerk of the Circuit Court on the 23rd of December, 1920, and that after reading it, left it on the desk of the clerk, A. L. Durrance, "near other papers as directed by said A. L. Durrance," and that he did not see the document again "until the 24th day of January, 1921, when he handed the said A. L. Durrance the sum of $1.00 for placing the said mandate upon record." Morgan also further testified that "he had no knowledge whatever as

.to the location of said document after he placed it on the desk of the said A. L. Durrance," and that on the "twenty-fourth day of January, 1921, the said A. L. Durrance first made a search among various papers upon his desk in his office in the court-house at Arcadia, and then and there found the said instrument upon his said desk."

It is quite apparent from this that the mandate was mislaid, and, therefore, not among the records or files of the court between the 23rd of December and 24th of January, and during that time was not "subject to inspection by whomsoever it may concern," nor was it "with the clerk as a record subject to be inspected by those who have an interest in it."

In Mutual Life Ins. Co. v. Phinney, 76 Fed. Rep. 617, the court held that "where the record does not show that the original writ of error sued out in the circuit court of appeals has been formally filed in the trial court, even though it was in fact delivered to and lodged with the clerk, the appellate court is without jurisdiction."

In its discussion, Circuit Judge Ross said: "It may be that in some instances and for some purposes the mere deposit of a paper by a party or his attorney with the clerk of the court, and his receipt thereof, of itself constitutes a 'filing'."

I quite agree with this. Thus if an attorney delivers to the clerk a paper that should be filed on a certain day, the clerk cannot put him in default by mislaying it, or failing to put his file mark on it. On the other hand, when a paper is delivered to a clerk, which when "filed"—"placed among the public records,"—becomes notice to other parties whose rights would be affected by the notice; such paper is not filed, if the clerk mislays it, and subsequently,

after making "a search among various papers upon his desk in his office" finds the instrument. The mandate in the post office—among a lot of papers on the clerk's desk, —in possession of an adverse attorney, or in the pocket of the clerk, is not "subject to be inspected by those who have an interest in it," or "subject to inspection by whomsoever it may concern," and therefore is not filed.

The mandate in this case was filed on the 24th of January, 1921. The offer to redeem was made on February 5, 1921, and the money paid into the registry of the court on February 7, 1921. Using the latter date, fourteen days elapsed from the filing of the mandate to the deposit in the court, which added to the twenty-three days that elapsed before the supersedeas became effective, the payment was made in thirty-seven days, and was well within the time allowed by the chancellor for redemption.

The chancellor heard testimony on the question of when the mandate was filed in his court. He is familiar with conditions there, and knows the parties concerned. He found "that the complainants have tendered into the registry of this court the full amount of money with interest as required by the said final decree, and that such tender was made within sixty days from the filing in this court of the mandate of the Supreme Court affirming the said final decree."

I think he was clearly right and concur in the affirmance of the judgment.

ELLIS, J.—Dissenting.

The facts in this case are that the decree was entered February 18th, 1919, sixty days were allowed within which to redeem. Appeal was taken by complainant March 12th,

1919, and supersedeas granted. Twenty-three days of the sixty in which complainant could have redeemed had elapsed. The supersedeas then operated to stop *future* proceedings under the decree. See Runyon v. Bennett, 4 Dana. (Ky.) 598, 29 Am. Dec. 431.

Anything done under the decree prior to the supersedeas was valid. The supersedeas did not undo what had already been done. County Commissioners Polk Co. v. Johnson & Co., 21 Fla. 577.

When the supersedeas was obtained complainant had utilized twenty-three days of the time allowed her by the decree in which to redeem.

The decree was affirmed December 3rd, 1920. The tender was made February 5th, 1921. The time elapsing between the two dates being sixty-three days which with the twenty-three complainant utilized before the supersedeas was obtained made eighty-six days. It is the practice of this court, through its clerk, to notify the parties to a cause immediately upon a decision being handed down. The complainant then presumably came into possession of the knowledge by notice directly given to her, or her solicitor, that the decree had been affirmed fully sixty days before she made a tender.

But the language of the majority opinon is as follows: "The decree allowing sixty days from its filing for redemption was subject to appeal; and after affirmance on appeal duly taken the period of sixty days should be allowed for redemption. When the decree was affirmed, the time that elapsed before the appeal was taken twenty-three days after the decree was filed should not be deducted from the sixty days within which redemption could be made after affirmance of the decree and the receipt of

the mandate for filing in the Circuit Court. This rule is particularly applicable to cases of redemption of homesteads from mortgages, and it is a proper rule under the facts of this case.''

This rule is supported by the citation of no authority either decision or text book. The rule as announced is itself uncertain in that it is doubtful whether the full time allowed for redemption in the decree is to be computed from the date of the affirmance of the decree, or the receipt of the mandate by the clerk which may be thirty days after, or from, the date of actual filing of the same by him.

The majority opinon therefore holds in effect that where a complainant in a suit to declare a deed absolute in form to be a mortgage and for the right to redeem the court grants the prayer and allows the complainant sixty days in which to redeem by paying a sum found to be due, the complainant may delay for six months, lacking one day, before taking an appeal and then obtaining a supersedeas has full sixty days after the mandate from this court has been filed in the court below, in which to redeem although this court may have withheld the mandate thirty days after the affirmance of the decree.

The rule promulgated by the majority opinion in this case announces as a reason for such conclusion that the decree ''was subject to appeal.'' But an appeal could have been duly taken within six months after the date of the decree, when the entire period of sixty days would have elapsed plus four months. Upon affirmance in that cause would the rule announced secure to complainant sixty days more from the date of the affirmance, or the receipt of the mandate by the clerk for filing, which might be thirty days later?

If no part of the period allowed in the decree for redemption, which elapsed before the appeal was taken, is to be deducted after the decree of affirmance, it is certainly difficult to understand why the entire time should be deducted if it had elapsed before appeal. So that in the case supposed a person situated like the complainant, under the rule which is said to be "particularly applicable to cases of redemption of homesteads," would have instead of sixty days allowed for redemption, two hundred and seventy or more.

Such unreasonable and unjust delays in court procedure do not make for satisfaction and contentment in the administration of justice.

The defendant in this case was in possession of the land under a deed from the person under whom complainant claimed. His deed was declared to be a mortgage, that is if the complainant should redeem within sixty days otherwise it was to remain what it purported to be, namely, a deed of conveyance. He may have been required under the rule announced to possess his soul in patience two hundred and seventy days more before he could know that he had a title under his deed to the land which he may have improved and beautified and used as a home under the belief that he had purchased the land and not taken a mortgage upon it.

The opinion states that the rule announced is "particularly applicable to cases of redemption of homesteads from mortgages," why it is so is not stated. But even if there existed any authority for such proposition it would not be applicable to the facts in this case, because at the time of the transaction between the appellant and the Williamses the latter placed Morgan in possession of the property and abandoned it as their home, moved out of the

State and remained away for several years. It was their purpose to leave the State when the sale was made. See record in Williams v. Morgan, 80 Fla. 779, 86 South Rep. 845.

But I have been unable after diligent search to find any authority for the rule announced and am referred to none by the opinion. The rule announced is contrary to the purpose of a writ of supersedeas and the function it was supposed to perform. The sole function of a writ or order of supersedeas is to stay *future* proceedings under the order or decree appealed from. *Every* thing done under the decree up to the time when the supersedeas is obtained is valid. It adds nothing to the decree, takes nothing from it and leaves it when lifted as it found it. See County Commissioners Polk Co. v. Johnson & Co., *supra.*

It is nothing but a stay of proceedings. See Harvey v. McDonald, 109 U. S. 150, 27 (L. Ed.) 888, 3 Sup. Ct. Rep. 136; Mabry v. Ross, 1 Heisk (Tenn.) 769; Bentley v. Fowler, 8 Ark. 375; 2 Cyc. 890; Christy v. Flanagan, 87 Mo. 671; 20 Enc. Pleading and Practice 1240-1244; Thalheim v. Camp Phosphate Co., 48 Fla. 190, 37 South. Rep. 523; Runyon v. Bennett, *supra.*

The phase of the decree appealed from which was objectionable to the complainant was not that the instrument was a mortgage, nor that the complainant should have sixty days in which to redeem. The complainant did not need the restraining power of the court to prevent her from treating the deed as a mortgage. She desired to so treat it. The decree was in her favor. Was that feature of the decree superseded?

She was not complaining that sixty days in which to redeem was an unreasonably short time. There was no contest whatsoever on that phase of the decree. Her sole

complaint was that the amount she was required to pay was too much, not that the time allowed in which to do it was objectionable. If her contention was right the decree would be reversed, if wrong it would be affirmed, but she would not be deprived of a single hour allowed her by the court in which to redeem.

The supersedeas preserved the *status in quo*. That is what its history in England to 1772 showed to be its purpose and what the practice of this State and other states of the Union concede it to be. The writ or order has no flexibility of texture nor sentiment of purpose. It simply preserves the *status in quo* which existed at the time the writ was obtained. It is not one thing for an imaginary homestead and another for an office, store, building or farm. Its function is the same whether the party in whose behalf it is obtained is an infant, the head of a family or an interest loving financier.

With great deference to my associates, I differ from them both in their conclusion and the reasoning by which that conclusion is reached. I also differ from them in the statement that a writ of supresedeas can be "particularly" applicable to any condition. If the supersedeas is applicable that is all that may be said. It functions. If it is not applicable it cannot be made by any consideration of the sentiment.

WEST, J. concurs.